**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MITCHELL DINNERSTEIN,        1:13-cv-5598 (NLH/KMW)

      Plaintiff,        **OPINION**

   v.

BURLINGTON COUNTY COLLEGE,

      Defendant.

---

**APPEARANCES**:

MITCHELL DINNERSTEIN
18 LAWRENCE STREET
JACKSON, NJ 08527
    Appearing pro se

CARMEN SAGINARIO, JR.
KELLY ESTEVAM ADLER
CAPEHART & SCATCHARD, P.A.
8000 MIDLAND DRIVE
SUITE 300S
MOUNT LAUREL, NJ 08054
    On behalf of Defendant

**HILLMAN, District Judge**

This case concerns the termination of Plaintiff Mitchell Dinnerstein's employment with Defendant Rowan College at Burlington County College ("the College"),[1] allegedly on the basis of his Jewish faith. Plaintiff asserts a claim under Title VII of the Civil Rights Act of 1964. Defendant moves for

---

[1] Burlington County College is now known as Rowan College at Burlington County College.

summary judgment, to deny Plaintiff additional discovery and

time to respond to Defendant's summary judgment motion, and for

sanctions against Plaintiff.  The Court will grant summary

judgment in favor of Defendant, finding no need for additional

discovery, but will, reluctantly and despite the extraordinary

circumstances present here, deny the motion for sanctions.

**I.**

The Court takes the following facts from Defendant's

Statement of Undisputed Material Facts, to which Plaintiff filed

no response.[2]  Plaintiff was hired by the College on July 15,

2007 as a Maintenance Mechanic-Electrician.  Plaintiff was an

employee within the Physical Plant Department, which is the

---

[2]      Defendant notes that Plaintiff failed to comply with Local
Civil Rule 56.1(a), which provides, in pertinent part:

> On motions for summary judgment, the movant shall
> furnish a statement which sets forth material facts as
> to which there does not exist a genuine issue . . . .
> The opponent of summary judgment shall furnish, with its
> opposition papers, a responsive statement of material
> facts, addressing each paragraph of the movant's
> statement, indicating agreement or disagreement . . . .
> [A]ny material fact not disputed shall be deemed
> undisputed for purposes of the summary judgment motion.

As a result of this violation, Defendant argues the material
facts set forth in Defendant's Statement of Undisputed Material
Facts must be deemed undisputed in deciding this motion.
Plaintiff has clearly violated an important local rule of
procedure which greatly facilitates the Court's consideration of
summary judgment motions.  Nonetheless, in light of his pro se
status, the Court will consider the record as a whole in
determining whether Plaintiff has proffered sufficient evidence
of disputed issues of material fact.

College's construction and maintenance department.

The College has a Civility Policy, which provides:

> Burlington County College is a community of individuals. As such, we must always strive to recognize the dignity and worth of each member of our community. It is, therefore, the policy of the college that each individual, regardless of status (student, administrator, support staff or faculty member) must treat every other individual, irrespective of status, rank, title or position, with dignity and respect.
>      It will be a violation of the policy for any individual or group of individuals to engage in any of the following types of behavior:
>
>      . . . .
>
>      2. Use of foul, abusive or demeaning language (written or verbal) or obscene gestures directed towards another (either as a group or an individual) . . . .

The Civility Policy was covered in training sessions, of which Plaintiff attended three – one in 2008, one in 2009, and one in 2010.

Plaintiff's first documented violation of the Civility Policy was in April 2008, when Plaintiff used foul language and yelled at a coworker. In August 2008, Plaintiff again violated the Civility Policy by yelling at another coworker with foul language. Later that month, Plaintiff committed yet another violation and was suspended for three days. As a result of this violation, Plaintiff was informed that future violations would result in further disciplinary action, including potential termination. In January 2010, Plaintiff's superiors confronted him regarding his refusal to perform the work assigned to him,

which constituted insubordinate behavior.  He was again
suspended.

In August 2011, Plaintiff was issued a final warning after
again yelling at a coworker and also being insubordinate,
resulting in yet another suspension.  Plaintiff was told that
any further misconduct would result in his termination.  Around
December 1, 2011, Plaintiff made profane remarks to John
Fritsch, the Assistant Manager of Physical Plant; Jay
Falkenstein, the Manager of Physical Plant; and Donald Hudson,
the Director of Physical Plant.  Following this violation, a
fact-finding hearing was held, in which Plaintiff admitted to
making the profane remarks.  On December 8, 2011, Plaintiff's
employment was terminated.

Plaintiff received his Notice of Right to Sue from the
Equal Employment Opportunity Commission on August 15, 2013.
Plaintiff then filed a complaint with this Court on September
18, 2013, suing Defendant for employment discrimination under
Title VII of the Civil Rights Act of 1964.[3]  Plaintiff asserted
discriminatory acts occurred from September 2007 through
November 2011.  According to Plaintiff, he was harassed,
retaliated against, and eventually terminated from his
employment based on his religion.

---

[3]    This Court has federal question jurisdiction over this case
pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5.

The Court entered a Notice of Call for Dismissal on August 22, 2014, requiring Plaintiff to submit an affidavit setting forth his good faith efforts to prosecute this case by September 2, 2014. No such affidavit was filed by Plaintiff. Consequently, the Court issued a September 3, 2014 Order of Dismissal based on Plaintiff's failure to prosecute under Local Civil Rule 41.1.

Plaintiff wrote to the Court on September 4, 2014 and on September 16, 2014, acknowledging he was late in responding to the Notice of Call for Dismissal and requesting the Court reopen the case. Construing this as a motion to reopen pursuant to Federal Rule of Civil Procedure 60(b), the Court found there was "excusable neglect" in Plaintiff's failure to respond to the Notice of Call for Dismissal. Thus, on January 14, 2015, the Court reinstated Plaintiff's complaint and reopened the case.

The case then proceeded through a difficult discovery process. It was difficult largely because of Plaintiff's rude, inflammatory, and slanderous slurs and false accusations against both his adversaries and the Magistrate Judge assigned to this matter. It was also protracted because of Plaintiff's repeated failures to participate in discovery. On December 20, 2016, this Court withdrew the reference to the Magistrate Judge in order to personally oversee discovery and to move the matter forward. Accordingly, the Court held a discovery conference on

February 27, 2017 and directed a schedule for the completion of all remaining discovery and a deadline for dispositive motions. On June 12, 2017, the date set by the Court for dispositive motions, Defendant moved for summary judgment. On September 22, 2017, Defendant moved for sanctions against Plaintiff.

## II.

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); <u>see</u> <u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing <u>Celotex</u>, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). For

"the non-moving party[] to prevail, [that party] must 'make a
showing sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will
bear the burden of proof at trial.'"  Cooper v. Sniezek, 418
F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at
322).  Thus, to withstand a properly supported motion for
summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party.  Anderson, 477 U.S. at 257.

### III.

Plaintiff's complaint contains little in the way of factual
averments or details about his claims.  The Court construes
Plaintiff's complaints of retaliation, harassment, and the
termination of his employment as asserting an unlawful
discrimination claim, a hostile work environment claim, and an
unlawful retaliation claim under Title VII.  The Court first
turns to the unlawful discrimination claim.

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) sets
forth a burden-shifting framework for Title VII employment
discrimination cases.  Carter v. Midway Slots & Simulcast, 511
F. App'x 125, 128 (3d Cir. 2013).

> [A plaintiff] has the burden of establishing a prima
> facie case of discrimination by proving that (1) he is
> a member of a protected class; (2) he suffered some form
> of adverse employment action; and (3) this action
> occurred under circumstances giving rise to an inference

8

of unlawful discrimination that might occur when nonmembers of the protected class are treated differently.

Id. "Once a plaintiff establishes a prima facie case, the employer must provide a legitimate, non-discriminatory reason for the adverse employment action." Id. After this burden is met, "the burden again shifts to the plaintiff to demonstrate that the employer's reason is pretextual." Id.

Defendant concedes, for the purposes of summary judgment, that Plaintiff has satisfied the first two prongs of his prima facie case. Plaintiff is a member of a protected class due to his Jewish religion and he suffered an adverse employment action when his employment was terminated. However, the Court finds that Plaintiff has failed to proffer sufficient evidence on the third prong of his prima facie case, more specifically that his termination occurred under circumstances giving rise to an inference of unlawful discrimination. Without satisfying this burden, Plaintiff's case cannot move forward.

Plaintiff's briefing before the Court relays little in the way of relevant facts in support of his claim. The Court discerns the following: Plaintiff claims that the "disciplinary actions [against him] w[]ere [l]ies," that he "reported acts of anti-Semitism to [his] supervisor at the college and they were not only ignored, but retaliation was swift," and that he "was denied the right to grievance." He further argues he was

"slandered," "[d]evalued," and "harassed" by the College.  His various other filings with this Court make clear he is alleging multiple instances of discrimination based on his Jewish religion during his employment with the College, leading up to and including his eventual termination.

Plaintiff has not provided this Court with any evidence to support his allegations, even giving the most liberal construction to Plaintiff's filings and granting to Plaintiff every reasonable inference.  Courts "tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings." Mala v. Crown Bay Marina, Inc., 704 F.3d 239 (3d Cir. 2013).  Indeed, this is an "obligation" for district courts, "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Higgs v. Attorney Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (alteration in original) (quoting Tristman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006)).  Just "because it is difficult to interpret a pro se litigants pleadings" does not mean "it is not necessary to do so." Id.

While Plaintiff argues this Court has "disrespect[ed]" him because he does not express himself "as a trained lawyer would

have done," the Court construes his claims with the leniency afforded to pro se litigants. The Court does not expect Plaintiff to advocate in the same way a trained attorney would, and the Court has not previously, and is not now, allowing Plaintiff's pro se status to improperly impact its decision regarding the merits of his complaint.

That being said, "pro se litigants still must allege sufficient facts in their complaints to support a claim." <u>Mala</u>, 704 F.3d at 245. Indeed, "[a]lthough <u>pro se</u> pleadings and filings must be 'construed liberally,' the same summary judgment standard applies to <u>pro se</u> litigants." <u>Bank of Nova Scotia v. Ross</u>, No. 2010-118, 2012 WL 4854776, at *3 (D.V.I. Oct. 12, 2012). "Proceeding <u>pro se</u> does not otherwise relieve a litigant of the usual requirements of summary judgment, and a <u>pro se</u> party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." <u>Rodriguez v. Hahn</u>, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (quoting <u>Parkinson v. Goord</u>, 116 F. Supp. 2d 390, 393 (W.D.N.Y. 2000)).

Plaintiff's bald accusations and unsupported claims are insufficient to raise a genuine issue of material fact as to whether discrimination played a part in the College's decision to terminate Plaintiff's employment. For instance, Plaintiff testified in his deposition that "when you're dealing with

prejudice[d] people, they're not going to listen to you and do what you say if you're Jewish." He further testified that even Jewish members of the administration are "going to discriminate against anyone . . . who is not their friend" and that "it happens all the time." These generalized, subjective beliefs are insufficient to maintain an unlawful discrimination claim. Indeed, a "[p]laintiff's mere pronouncement or subjective belief that []he was terminated because of h[is religion] is not a substitute for competent evidence." Martin v. Healthcare Bus. Res., No. 00-3244, 2002 WL 467749, at *6 (E.D. Pa. Mar. 26, 2002).

Moreover, Plaintiff, in his deposition, admits there could have been other reasons for his termination wholly unrelated to religion. For instance, he stated he "th[ought he] was fired for . . . turning in other people robbing copper." He further stated that part of Defendant's motivation for terminating him was "to take care of their political friends," and that the administration targeted him for thinking because "[t]hey just didn't like people thinking."

As for claims of religious discrimination, Plaintiff's vague general allegations are supplemented by only the most meager specific instances of improper discriminatory acts or conduct. From the evidence before the Court, provided in the excerpts from Plaintiff's deposition offered to support

Defendant's motion, there were only two comments made by employees or administrators at the College referring to Plaintiff's Jewish faith.  First, a coworker in the boiler room allegedly said "the Jew doesn't know anything," referring to Plaintiff.  Second, Plaintiff testified "[t]he entire maintenance shop" said he was only hired because he was Jewish.

These isolated, offhand comments (in the latter instance not even attributed to a particular individual) are insufficient to show discrimination linked to Plaintiff's termination. Indeed, neither of the comments appear to have been made by or otherwise communicated to any members of the administration, or other decisionmaker, who would have had a say in Plaintiff's termination.  See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . .").

Even if Plaintiff were to satisfy his prima facie burden, the Court finds Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination, more specifically his repeated violations of the Civility Policy. Plaintiff admitted to this underlying conduct in his deposition.[4]

---

[4]     Upon being asked whether he used "the F word" or other profanities in speaking to his supervisor, Plaintiff replied "Yeah, it's in there," referring to a hearing transcript.  He

Moreover, it is undisputed that the College enforced the Civility Policy incrementally, progressively, and with proper notice and procedural protections. Further, Plaintiff has failed to meet his burden to demonstrate that this stated, appropriate, and well documented reason for termination was a pretext. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's unlawful discrimination claim.

For the same reasons, the Court also finds Plaintiff unable to proceed with a Title VII hostile work environment claim based on religious harassment.

> To survive summary judgment on this claim, [a plaintiff] must show: (1) intentional harassment because of religion, that (2) was severe or pervasive, and (3) detrimentally affected him, and (4) would detrimentally affect a reasonable person of the same religion in that position, and (5) the existence of respondeat superior liability.

Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 292 (3d Cir. 2009). For the first prong, "[t]he proper inquiry . . . [i]s whether a reasonable factfinder cold view the evidence as showing that [a plaintiff]'s treatment was attributable to her religious faith and practice." Abramson v. William Paterson Coll., 260 F.3d 265, 277 (3d Cir. 2001). As Plaintiff has proffered no evidence, aside from his own subjective beliefs, that he was harassed due to his Jewish faith, this claim

_____

further admitted in his deposition to calling someone a "pantywaist faggot."

similarly cannot survive summary judgment.

Finally, for an unlawful retaliation claim under Title VII, "a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). The Court similarly finds Plaintiff has failed to proffer sufficient evidence to satisfy this claim.

Plaintiff testified at his deposition that, at a meeting with the administration where he was given his final warning, he "thinks" he told the administrators he was discriminated against because of his Jewish faith. Even assuming this to be true and assuming this qualifies as protected activity, Plaintiff has not established a causal connection between that activity and his termination. Plaintiff has not showed that his termination was motivated by an intent to retaliate. See id. at 341 ("The ultimate question in any retaliation case is an intent to retaliate . . . ." (quoting Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006))).

Further, "the familiar McDonnell Douglas approach" also applies to retaliation claims, in which "'the burden shifts to the employer to advance a legitimate non-retaliatory reason' for

its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" <u>Id.</u> at 342 (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 500-01 (3d Cir. 1997)). For the same reasons stated in discussing the unlawful discrimination claim, Plaintiff has similarly not satisfied that burden here. Accordingly, the Court will grant Defendant's motion for summary judgment on the entirety of Plaintiff's complaint.

## IV.

The Court's decision to grant summary judgment is made after full consideration of all submissions made by Plaintiff in opposing Defendant's motion for summary judgment and in support of a claim for more discovery and time to respond to Defendant's summary judgment motion.[5] The Court starts with the proposition

---

[5] Plaintiff filed by letter what appears to be a timely response to Defendant's summary judgment motion entitled "Objection to Motion for Summary Judgment." The letter was entered by the Clerk on the docket on June 20, 2017, approximately one week after Defendant's motion for summary judgment was filed with the Court. Defendant's reply was timely filed on July 7, 2017. Defendant's motion for summary judgment was therefore ripe for adjudication as of that date. Thereafter, on September 11, 2017, Plaintiff filed another letter with the Court, entitled "Request for time extension to review Documents and legal argument in support of my case." This prompted an opposition brief from Defendant and a motion for sanctions both filed on September 22, 2017. Plaintiff's reply consisted of an October 5, 2017 letter, entitled "Initial

that the Federal Rules of Civil Procedure apply to all litigants, even those who proceed pro se. While the Court must afford a pro se litigant certain leeway, the pro se litigant must act with civility, abide by the Court's clear directions, and act in a diligent matter so that the case may proceed in due course. This Plaintiff has failed to do all of these things.

More specifically, Plaintiff has continuously ignored this Court's instructions regarding communicating with counsel and the Court. In the Court's December 20, 2016 Order, the Court noted that "the unsubstantiated and false allegations made by Plaintiff in his recent letters [regarding the Court and his adversaries] constitute the type of uncivil, abrasive, abusive, hostile, and obstructive conduct contemplated by the Guidelines [for Litigation Conduct in Appendix R to the Local Civil Rules]." Consequently, the Court prohibited Plaintiff from filing any further letters "in light of Plaintiff's obstructive conduct in repeatedly filing letter applications with the Court that do not relate to the merits of this case."

Further, Plaintiff has failed to participate in discovery

---

response to Plaintiff 'Notice Of motion for Summary Judgment July 17, 2017. And request for the Board of electrical contractors to Clarify there law. Because of dependences, submit ion of Exhibit (L)." Although procedurally improper and untimely, the Court considers all of Plaintiff's submissions in deciding Defendant's motion for summary judgment and for sanctions.

in good faith.  In his filings objecting to the summary judgment motion, Plaintiff asks Defendant to supply him with "[n]ames and contact information of witnesses, (2) [d]ocuments, [and] (3) a tape [Y]our [H]onor verbally ordered Ms. Adler[] to give me." This request was untimely and violated the discovery schedule set by the Court in its February 27, 2017 Order.  That conference itself was necessitated by Plaintiff's failure to participate in discovery and came after Plaintiff had already had a full opportunity to seek discovery and no meaningful effort to do so.

As Defendant points out and the record confirms, Plaintiff never served a discovery request on Defendant either before or after this Court's February 27, 2017 Order.  Moreover, Defendant, unlike Plaintiff, acted at all times in compliance with this Court's Orders.  To the extent Plaintiff now claims entitlement to additional materials not sought or identified before the June 12, 2017 date set for dispositive motions, he has failed to demonstrate how any additional discovery will allow him to defeat Defendant's properly supported motion for summary judgment.

It is clear on this record that Plaintiff seeks delay simply for the purpose of delay rather than time to develop additional material facts.  Plaintiff has had more than a fair opportunity for discovery and seeks to use that process now

simply to harass Defendant and to delay this proceeding without good cause. The Court will deny Plaintiff's unsupported and unwarranted request for additional discovery and additional time to respond to Defendant's summary judgment motion. Fed. R. Civ. P. 56(d)(3).

## V.

Finally, the Court addresses Defendant's September 22, 2017 motion for sanctions against Plaintiff based on offensive statements made in Plaintiff's various filings with this Court. Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief

or a lack of information.
Rule 11(c) further provides that if "the court determines that
Rule 11(b) has been violated, the court may impose an
appropriate sanction on any . . . party that violated the rule
or is responsible for the violation."

"It is well-settled that the test for determining whether
Rule 11 sanctions should be imposed is one of reasonableness
under the circumstances, the determination of which falls within
the sound discretion of the District Court." Brubaker Kitchens,
Inc. v. Brown, 280 F. App'x 174, 185 (3d Cir. 2008); accord
Scott Fin. Co. v. Andrews, No. 90-4574, 1991 WL 37883, at *2
(D.N.J. Mar. 18, 1991) ("Broad discretion is granted to the
trial court to fashion sanctions under Rule 11."). Further,
Rule 11 grants district courts "the power to sanction abusive
pro se litigants." Thomas v. Conn. Gen. Life Ins. Co., No. 02-
136, 2003 WL 22953189, at *3 (D. Del. Dec. 12, 2003) (quoting
Ketchum v. Cruz, 775 F. Supp. 1399, 1403 (D. Colo. 1991), aff'd,
961 F.2d 916 (10th Cir. 1992)). Rule 11 sanctions are "intended
to be used only in 'exceptional' circumstances." Ferreri v.
Fox, Rothschild, O'Brien & Frankel, 690 F. Supp. 400, 405 (E.D.
Pa. 1988).

Defendant has identified numerous inflammatory remarks from
Plaintiff in its brief to this Court. The Court acknowledges
these statements and their offensive nature, directed at this

Court, its judges, Defendant, and Defendant's counsel, and sees
no reason to repeat them here.

While the Court acknowledges that the obligations of Rule
11 still apply to Plaintiff and that Plaintiff has engaged in
contemptable conduct, the Court declines, in its discretion, to
impose sanctions on Plaintiff or to hold Plaintiff in contempt.
See, e.g., Kabbaj v. Google, Inc., No. 13-1522, 2014 WL 1369864,
at *7 (D. Del. Apr. 7, 2014) (declining to impose sanctions
after finding "Plaintiff's filings have included threats of
violence, derogatory language, and pornographic photographs").
This Court denies Defendant's motion reluctantly but does so for
two main reasons.

First, the threat of sanctions in the past has done nothing
to modify or change Plaintiff's behavior.  Second, any sanctions
and the prospect for further proceedings related to those
sanctions will only serve to perpetuate a forum for Plaintiff's
scurrilous, slanderous, and inflammatory, but ultimately
meaningless, diatribes and ramblings.  The simplest, most
direct, and most effective remedy for Plaintiff's contemptible
conduct is to end this meritless litigation.

Finally, Defendant also requests this Court strike the
September 11, 2017 letter from Plaintiff, filed after
Defendant's Reply Brief, arguing the letter is an impermissible
sur-reply brief.  The Court agrees that this submission

essentially acts as a sur-reply brief.  Local Civil Rule
7.1(d)(6) provides: "No sur-replies are permitted without
permission of the Judge or Magistrate Judge to whom the case is
assigned."  Plaintiff did not ask for or obtain permission from
the Court to file such a submission.  Given Plaintiff is
proceeding pro se, and particularly considering the submission
did not present any additional facts or legal arguments which
add to the merits of Plaintiff's case, the Court denies
Defendant's request to strike the September 11, 2017 letter.
See, e.g., Argonaut Ins. Co. v. I.E., Inc., No. 97-4636, 1999 WL
163639, at *2 (E.D. Pa. Mar. 22, 1999) (declining to grant a
motion to strike a sur-reply, finding that "[n]either plaintiff
nor defendant provided this Court with additional facts nor
legal arguments in their respective replies").  The Court also
declines to strike any other submissions by Plaintiff despite
the inflammatory remarks made in the submissions.

   An appropriate Order will be entered.


Date:  November 21, 2017           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.